### DRUID S. S. CO., Inc., v. ALLAUN.

(Circuit Court of Appeals, Second Circuit. December 11, 1918.)

#### No. 96.

1. BROKERS ⬤⟿86(3)—ACTION FOR COMMISSION—EVIDENCE.

Evidence that defendant agreed to pay plaintiff a commission on sale of a vessel by a certain date, and that it refused an offer within the time, but accepted it afterward, falsely stating that it received more, *held* to sustain a finding that its uttered refusal was in bad faith.

2. APPEAL AND ERROR ⬤⟿1039(13)—HARMLESS ERROR—VARIANCE.

Variance between complaint, alleging employment of plaintiff on commission of a certain per cent. on selling price to procure the United States to purchase a vessel before a certain date, and proved contract to pay such per cent. of purchase price for commission and legal advice if the United States purchased the vessel before such date, *held* not prejudicial.

In Error to the District Court of the United States for the Southern District of New York.

Action at law by William E. Allaun against the Druid Steamship Company, Incorporated. Judgment for plaintiff, and defendant brings error. Affirmed.

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Prior to April 14, 1917, the Druid Company owned the steamship Druid, which it desired to sell and hoped that the United States would purchase. For reasons not clearly appearing in the record, the plaintiff below, Allaun, was employed to bring about this sale. It seems to have been admitted that prior to April 14 he rendered some services in respect to the matter; but, whatever were the earlier agreements in regard thereto, they were superseded by a letter written to Allaun by the Druid Company on said April 14, as follows:

"Dear Sir: It is hereby mutually agreed and understood that this letter cancels all previous agreements between your good self and the Druid Steamship Company. In the event that the steamer Druid is purchased by the United States government before May 31, 1917, and the purchase price is $175,000, your share for commission and legal advice will be $15,000. In the event the purchase price is under $175,000, your share for commission and legal advice will be 8 per cent. of the purchase price."

The rest of the letter is immaterial. It was signed by the president of the defendant below and agreed to in writing by Allaun.

This action was brought by Allaun to recover 8 per cent. of $90,000, at which price the Druid Company did sell the steamer to the United States, but made such sale after May 31st, viz. on or about June 2d.

At trial Allaun testified that not later than April 27 he ascertained that the government would buy the boat and would pay $90,000 and no more, that being her appraised value as declared by a naval board of appraisers; and he communicated this fact to the president of the Druid Company, who refused to take less than $170,000, and continued such refusal, although repeatedly reminded that the smaller sum was the government's figure and would not be departed from, until about May 15th, when said president left New York and could not be found by Allaun until about June 11th, when, meeting him on the street, he informed plaintiff below that he had sold the boat to the government and got $100,000 for it. Thereupon Allaun investigated the matter, found that only $90,000 had been paid, and brought this suit.

The complaint stated the matter under three so-called causes of action:

(1) That plaintiff had been employed to procure the United States to purchase the Druid at a commission of 8 per cent. upon the selling price, such procurement to be effected before May 31, 1917; that he had so procured the government as purchaser at $90,000, "which was acceptable to the" steamship company, wherefore commission was claimed.

(2) Set forth the same state of facts, but alleged that the period to end May 31st had been extended "for a reasonable time * * * and until the steamship company should decide whether to accept said offer."

(3) Again set forth the same state of facts, but alleged that when, before May 31st, defendant below was apprised of the government's offer, it "professed itself dissatisfied therewith," although intending to accept said offer after May 31st, but "professed dissatisfaction and its intention to reject the [offer] for the wrongful and fraudulent purpose of depriving" Allaun of his commission.

Allaun had a verdict, and the steamship company brought this writ.

Duncan & Mount, of New York City (Courtland Palmer, of New York City, of counsel), for plaintiff in error.

Abraham Benedict, of New York City, for defendant in error.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). We do not consider the weight of the evidence. The jury's verdict requires us to accept Allaun's story as above outlined, and that verdict must be upheld, unless some prejudicial error can be shown.

In form this action is, as the complaint conclusively demonstrates, the ordinary suit for the commission ordinarily claimed by a broker who discovers and brings a purchaser to a willing seller; therefore

plaintiff pleaded in usual phrase that he was employed to "procure the government of the United States to purchase the steamship Druid" on or before May 31, 1917.

The contention on this writ rests on an exception to refusal to dismiss the complaint on the merits at the close of the whole case; i. e., defendant below thinks itself entitled to a directed verdict. We think it true that there was no evidence at all to support the second cause of action; i. e., to show any extension of the period to end May 31st. But no specific motion to dismiss that part of the complaint was made, and we decline to consider so technical a point without technical accuracy of procedure.

The first and third causes of action are but different ways of stating the same contention; for, if defendant below uttered words of refusal only as a trick to tide over the contractual period, there must have been a mental and actual acceptance—otherwise, there would have been nothing to conceal by the pretense. Whether there had been this mental acceptance, hidden under a pretense of refusal, in order to deprive Allaun of his commission, was the question very fairly put to the jury in a charge to which no exception was taken. The verdict has negatived any honest change of purpose or new intent to accept between May 31st and June 2d; therefore the sole inquiry for us is whether there was any evidence supporting the jury's conclusion. This inquiry is in two parts: (1) What facts justify the finding? and (2) assuming the facts as contended for by plaintiff below, does the law justify judgment for a broker's commission?

[1] 1. The diligence of counsel has not furnished any reported and similar state of facts. Admittedly mere refusal on the part of a vendor to perfect a sale does not prevent a broker, who has produced a ready, able, and willing vendee, from earning and receiving his commission. Watson v. Brooks (C. C.) 13 Fed. 540, and cases cited. The same case points out that conveyance is no part of a sale, so that a mere refusal to convey on the part of a vendor does not in the least affect the broker's rights. Nor is it necessary, in order to fix the vendor with a broker's commission, that the refusal to perfect the transaction should be either dishonest, arbitrary, or capricious. Home, etc., Co. v. Baum, 85 Conn. 383, 82 Atl. 970.

But a vendor's consent to the offered price is, of course, necessary, and here the only possible termination of Allaun's agency was by efflux of time without such consent. Instances are numerous of attempts to terminate a broker's employment and then to utilize his uncompleted labors. This can be done, out only with good faith on the vendor's part, and the question of bona fides is for the jury. Sibbald v. Bethlehem Iron Co., 83 N. Y. at page 390, 38 Am. Rep. 441.

Whatever difference exists between terminating a broker's agency before success and alleging unsuccess as a reason, but doing so in bad faith, and permitting such agency to expire by lapse of time after complete success on the broker's part by merely refusing a consent which is subsequently accorded direct to the vendors, is plainly not one of substance. We hold in this instance that from the prompt acceptance after May 31st of exactly the standing offer of more than

a month previous, coupled with the falsehood uttered to Allaun regarding the sum accepted, the jury were empowered to find that the uttered refusal was a subterfuge covering an intent ultimately to accept, and such conduct is bad faith.

[2] 2. If the written contract between the parties had evidenced the usual agreement between seller and broker, we should have no doubt; it would then have corresponded with the complaint. The burden would have lain on Allaun to show that he procured the government as a purchaser, and on failure to show such procurement he would have failed in the first duty of plaintiff under such a pleading.

It is entirely clear from the record that Allaun never procured the United States to purchase. The government at the time, just after declaration of war with Germany, was openly and notoriously in the market for all vessels tendered and able to pass naval survey. The defendant below had already tendered its steamer, though at a very high price. We do not know why Allaun was hired. There is no evidence of what preceded the writing of April 14th, and we cannot indulge in suspicion; but certain it is that, after learning of the official valuation of the Druid, Allaun did nothing but tell her owners that they had better take $90,000, because they would get no more. This was not earning a broker's commission in the usual way; and if such variance between allegata and probata injuriously affected defendant below, it was entitled at least to a dismissal, not on the merits.

But the written contract proved is not a broker's hiring, at least of the usual kind; it does not require Allaun to procure a purchaser at all; its condition is single and simple that, if the United States buys, then Allaun is to get a percentage for "commission and legal advice," and the rewards of many agents other than brokers are commonly called commissions. Both parties have maintained silence throughout the case as to the nature of this "legal advice," and we must accept it as a valuable consideration for a lawful contract.

Thus the proposition of plaintiff in error becomes this: That since Allaun alleged something that he never performed, i. e., procurement of the United States as a purchaser, but which on the evidence he was not in the least required to do, therefore he should have had a verdict directed against him. This is much too technical, unless injurious error is shown, and there is no injury on the construction of the contract of April 14th now contended for. This contract (we quote from plaintiff in error's brief)—

"was not a contract to go out and find a purchaser, but to sell the Druid to the United States before May 31st at a purchase price in the neighborhood of $175,000. The plaintiff was hired to get from the government a price acceptable to the defendant, and has failed to prove that he got such a price."

This is a proper interpretation, except as it predicates Allaun's right to recover on a price of about $175,000; no such limitation can be found in the contract words, and no such defense was ever pleaded, nor was any offer of evidence made to vary or explain the seemingly simple and plain words of bargain.

It results that under plaintiff in error's own construction of its admitted contract, the only question for the jury was rightfully put to

that body; and $90,000 has been declared a price "acceptable" to the owner of Druid, in the sense that it was intended to be accepted, and such intention existed before May 31st. It may be said that the argument in support of this writ hinges on the suggestion that "acceptable" means something that one accepts with satisfaction. It often does, but if the Druid Company's officers expected to have Allaun's right depend on their gratification or pleasure at the government's only price for their steamer, the contract should have been drawn differently.

Since, therefore, the too careful language of the complaint worked no injury to plaintiff below, we find no reversible error in the record, and affirm the judgment, with costs.